Aaron R. Bleharski (SBN 240703)
ableharski@sidley.com
SIDLEY AUSTIN LLP
1801 Page Mill Road, Suite 110
Palo Alto, California 94304
Telephone:  (650) 565-7000
Facsimile:  (650) 565-7100

Russell E. Cass (*pro hac vice*)
rcass@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
Attorney for Movant
SynQor, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SUBPOENA  ISSUED TO CISCO SYSTEMS, INC. | ) Case No.: 5:10-MC-80144-JW-HRL<br>)<br>) [E.D. Tex. Case No. 2:07-CV-497-TJW-CE,<br>) *SynQor, Inc. v. Artesyn Tech., Inc. et al.*]<br>)<br>) **SYNQOR, INC.'S REPLY IN SUPPORT OF**<br>) **ITS MOTION TO COMPEL COMPLIANCE**<br>) **WITH ITS SUBPOENA TO CISCO**<br>) **SYSTEMS, INC. (PURSUANT TO F.R.C.P.**<br>) **45)**<br>)<br>) Before:     August 3, 2010<br>) Date:       10:00 A.M.<br>) Time:       Hon. Howard R. Lloyd<br>) Place:      Courtroom 2, 5th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT.............................................................................................................. 1

        A.      Cisco Has The Burden Of Showing That Discovery Is Not Proper ............................. 1

        B.      Requests Relating to Cisco's Use of Defendants' Products ........................................ 2

                1.      Outstanding Information About Cisco's IBA Products (Request Nos.
                        1-4 and 8-12).................................................................................................. 2

                2.      Use of Defendants' Components ................................................................... 5

        C.      Requests For Worldwide Sales Data for Cisco IBA Products (Request Nos. 5-
                7) ................................................................................................................................ 6

        D.      Documents Relating to Defendants' State of Mind (Request Nos. 13-15).................... 8

        E.      Documents Relating to Alternatives to IBA Designs (Request Nos. 16-19)................ 9

III.    CONCLUSION.......................................................................................................... 10

SYNQOR'S REPLY IN SUPPORT OF ITS MTC                                    Case No. 5:10-MC-80144-JW-HRL

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3Com Corp. v. D-Link Sys, Inc.*,
2007 WL 949596 (N.D. Cal. Mar. 27, 2007) (Walker, C.J.) .................................................6, 7

*Cohen v. City of New York*,
255 F.R.D. 110 (S.D.N.Y. 2008) .....................................................................................................1

*Del Campo v. Kennedy*,
236 F.R.D. 454 (N.D. Cal. 2006).....................................................................................................2

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009).....................................................................................................10

*Diamond State Ins. Co. v. Rebel Oil Co., Inc.*,
157 F.R.D. 691 (D. Nev. 1994)....................................................................................................2, 8

*Gonzales v. Google*,
234 F.R.D. 674 (N.D. Cal. 2006).................................................................................................7, 8

*In re Legato Systems, Inc. Securities Lit.*,
204 F.R.D. 167 (N.D. Cal. 2001)................................................................................................5, 6

*Sedaghatpour v. California*,
2007 WL 4259214 (N.D. Cal. Dec. 3, 2007) ...............................................................................1

**OTHER AUTHORITIES**

Civil L.R. 37-2 ...............................................................................................................................1

SYNQOR'S REPLY IN SUPPORT OF ITS MTC                    Case No. 5:10-MC-80144-JW-HRL

## I.    __INTRODUCTION__

In its Opposition, Cisco does not dispute that each category of documents requested by SynQor's subpoena is relevant to the underlying litigation.[1]  Nor does Cisco provide any actual evidence that the requested documents would be unduly burdensome to produce or are more readily obtainable from any of the defendants to the underlying suit.  Instead, Cisco mischaracterizes SynQor's requests and relies on bare attorney argument to argue that a motion to compel is not warranted.  Given that SynQor's requests are admittedly relevant, Cisco's unsupported arguments are insufficient to meet its burden to show that discovery is not proper.

## II.    __ARGUMENT__

### A.    **Cisco Has The Burden Of Showing That Discovery Is Not Proper**

Cisco argues in its Opposition that SynQor has the burden of persuasion.  (Cisco Opposition at 12, 13).  In support, Cisco cites to Civil L.R. 37-2, which states that a motion to compel must detail "the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of FRCivP 26(b)(2) are satisfied."  However, Rule 37-2 merely specifies the form of motions to compel; it does not purport to alter the burden of persuasion.  That burden is squarely upon the party objecting to discovery.  According to the case law cited by Cisco, once the party seeking discovery has made a threshold showing of relevance, "it is up to the responding party to justify curtailing discovery."  *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (denying motion to quash third party subpoena).  The burden is placed on the target of discovery even in the case of discovery on a third party pursuant to Rule 45, as in this case.  *Id*.; *Sedaghatpour v. California*, 2007 WL 4259214, *1 (N.D. Cal. Dec. 3, 2007).  Moreover, the scope of discovery on third parties is *the same* as the scope of party discovery

---

[1] As noted by Cisco in its Opposition, a deposition has now been scheduled for August 19 and 20, 2010.  Only SynQor's document requests remain at issue.

SYNQOR'S REPLY IN SUPPORT OF ITS MTC                    Case No. 5:10-MC-80144-JW-HRL

under Rule 26(b).  *Del Campo v. Kennedy*, 236 F.R.D. 454, 457 (N.D. Cal. 2006).  Because the discovery sought is admittedly relevant, Cisco has the burden to come forward with evidence that the discovery would be unduly burdensome, cumulative, or more readily available from another source.

To meet its burden, Cisco has offered no evidence.  It has offered no documents, no affidavits from its employees, nor any other material other than bare attorney argument that production would be unduly burdensome.  When no evidence is submitted, a "generalized and unsupported allegation of undue burden is not sufficient to prevent enforcement of [] subpoenas." *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 696 (D. Nev. 1994) (citing *Doyle v. FBI*, 722 F.2d 554, 555 (9th Cir. 1983)).  Because Cisco has failed to meet its burden, SynQor's motion to compel should be granted.  Each category of disputed documents is discussed individually below.

B.      Requests Relating to Cisco's Use of Defendants' Products

1.      Outstanding Information About Cisco's IBA Products (Request Nos. 1-4 and 8-12)

Although Cisco does not dispute the clear relevance of the documents covered by these categories, Cisco acknowledges that, more than a year after SynQor's subpoena was served, that it still has not made a complete production.  In particular, Cisco has still not produced:

(1)      Documents sufficient to identify **all** of its IBA products.  Cisco has only identified some of its IBA products to date;

(2)      Schematics for each of those IBA products showing that their basic technical characteristics of the power supply design, including that the IBA product incorporates at least one unregulated or semi-regulated bus converter followed by two or more POLs, the quantities and arrangement of the bus converters and POLs, how the input voltage to the bus converters is created and how much that input voltage varies, and how much the outputs of the POLs vary.  Cisco has only produced schematics for some of its IBA products;

2

(3)    Split awards showing the approximate allocation of each defendants' bus converter to be purchased for use in its IBA products.  Cisco has produced split awards for some of these bus converters, but not all.

Cisco states that it will produce "all remaining materials" in this category in advance of the scheduled deposition.  (Cisco Opposition at 5).  Cisco, however, has not provided any date by which its production will be complete.  SynQor has asked when the missing documents will be available (and offered to send a courier to pick them up), but Cisco has not committed to a date to produce them other than saying that they will be at some unspecified time "prior to the scheduled corporate deposition."  (Reply DeZern Decl. Ex. U).  In light of Cisco's delays in responding to this subpoena to date,[2] SynQor cannot rely on Cisco's bare assurance, and the Court should enter an order compelling production of the missing documents.  SynQor simply cannot wait around for several more rounds of back-and-forth before it receives the documents it needs, and Cisco should not be permitted to wait until the last possible moment before the deposition to produce the remaining documents.

Cisco argues that SynQor has refused to cooperate and provide information to assist Cisco in responding to the subpoena.  (Cisco Opposition at 4).  To the contrary, SynQor has gone out of its way to assist Cisco in identifying responsive documents.  To begin, SynQor narrowly defined the IBA products that it is concerned with in the subpoena as "products incorporating at least one unregulated or semi-regulated bus converter, the output of which flows to the inputs of two or more

---

[2] Cisco first produced documents in response to SynQor's subpoena on October 23, 2009.  (DeZern Decl. Ex. D).  After SynQor determined that this production was incomplete, Cisco again produced documents on March 5, 2010 and March 15, 2010.  (DeZern Decl. Exs. F, G).  When this production still proved to be incomplete, Cisco assured SynQor that it would provide the necessary information produced more documents on May 28, 2010.  (DeZern Decl. Ex M at 2; Ex. N).  Cisco complains that SynQor did not provide part numbers for IBA products, but SynQor provided those, to the extent available, on November 3, 2009.  (SynQor Motion to Compel at 4).

3

POLs (or any other types of non-isolated, regulated DC-DC converters)." (DeZern Decl. Ex. A at 1). Because Cisco designs its own products and possesses its own schematics, it has employees who can identify which Cisco end products meet this definition without any further assistance from SynQor.

Nevertheless, to help ensure that all relevant documents were produced, SynQor on November 3, 2009, shared with Cisco a list of all of the defendants' bus converters that defendants indicated were purchased by Cisco or its contract manufacturers. (DeZern Decl. Ex. E). Contrary to Cisco's statement that this information was "unusable," the letter included the part numbers for the bus converters, the name of the specific Cisco entity or contract manufacturer who purchased the bus converter, and when provided by defendants, the names of Cisco end products or programs in which the bus converters are used. (*Id*.) This is all information that should be readily accessible to Cisco; SynQor merely provided it in an attempt to reduce the burden of Cisco's search. When SynQor obtained more information from defendants about which Cisco products their bus converters were used in, SynQor promptly shared that information with Cisco, even though this information was not necessary for Cisco to respond fully and accurately to the subpoena.[3] (DeZern Decl. Ex. Q). During the past year, Cisco never asked for any additional information from SynQor or suggested that it needed additional information to identify its own IBA products. Cisco has had all the information it needs to respond to SynQor's subpoena for months. SynQor needs Cisco to identify and provide

---

[3] Cisco states that SynQor provided Cisco with new information on June 9. (Cisco Opposition at 5). However, the defendants' part numbers in the sales data attached to SynQor's June 9 letter were already provided to Cisco in the November 3, 2009 letter. (DeZern Decl. Ex. P). SynQor simply provided the spreadsheets that included quantity and date information, in addition to the information previously provided, after it became apparent that Cisco had not yet provided documents regarding all of its IBA products. The purpose of the part numbers in the Nov. 3 letter was to distill defendants' information into a form that would help Cisco identify its IBA products. The purpose of the spreadsheets attached to the June 9 letter was to illustrate the discrepancy between defendants sales of bus converters to Cisco and Cisco's IBA sales data.

4

information on *all* of its IBA products, in order to account for all of defendants' bus converters sold to Cisco.

SynQor's motion to compel must be granted to ensure that Cisco will not continue to delay and make a production at the last minute that, upon review, turns out to be insufficient to fully respond to SynQor's subpoena.  SynQor is concerned that Cisco could drag this process out either until discovery closes in the underlying litigation or until the eve of the corporate deposition of Cisco.  Tellingly, Cisco has not committed to produce these documents before the hearing on this motion to compel, but instead at an unspecified time before the scheduled 30(b)(6) deposition on August 19 and 20.  If Cisco were to instead produce the documents far enough in advance of the hearing to allow SynQor to review the production for completeness, SynQor would be able to either withdraw this portion of its motion or identify any remaining deficiencies.

### 2.    Use of Defendants' Components

Cisco should be required to request from its contract manufacturers the actual quantity of bus converters and POLs supplied by each defendant for each Cisco board.  Contrary to Cisco's argument, SynQor has endeavored to obtain this information from the contract manufacturers themselves, but many are located overseas, making discovery from them difficult, if not impossible.  Cisco, who is in control of these documents by virtue of its relationship with its contract manufacturers, can readily obtain this information.

Cisco attempts to downplay its relationship with its contract manufacturers, calling it "only a business relationship."  (Cisco Opposition at 9).  However, a business relationship can be sufficient to show control when that relationship gives the party a legal right to obtain documents. *See In re Legato Systems, Inc. Securities Lit.*, 204 F.R.D. 167, 170 (N.D. Cal. 2001) (right of access to documents created by "affiliation" is sufficient).  This Court has rejected a more restrictive interpretation of "control" that would require "an absolute, exclusive and unconditional right to

5

obtain the documents upon demand." *Id.* at 169. Instead, it may be enough that the party has "a legal right to *endeavor* to obtain" the documents. *Id.* (emphasis in original) (quoting *In re Woolworth Corp. Securities Class Action Lit.*, 166 F.R.D. 311, 313 (S.D.N.Y. 1996)).

Cisco's relationship with its contract manufacturers is not a typical buyer-seller relationship. Cisco designs its own end products and qualifies the parts that are to be used in those products. The contract manufacturers are hired to manufacture the end products *according to Cisco's precise instructions*. They are not free to substitute parts of their own choosing. Cisco even negotiates prices with its suppliers based on split awards that it provides to its contract manufacturers to suggest how they should allocate their purchases of components. Under such an arrangement, Cisco surely has a right to find out from its contract manufacturers whether they are generally complying with the split awards. Cisco has not denied this. For this reason, it is in control of the documents for the purposes of Rule 34 and must produce them to SynQor.

C.      **Requests For Worldwide Sales Data for Cisco IBA Products (Request Nos. 5-7)**

As Cisco explained in its opening brief, worldwide sales information of products incorporating the claimed inventions is highly relevant to multiple issues in the case, including commercial success and reasonable royalty damages. Cisco argues that this information is of "very low probative value" because any damages calculation would be based only on the number of units sold in the United States. (Cisco Opposition at 10). This may be true with regards to lost profits damages, which compensate a patent owner for sales it would have made in the absence of infringement. However, a patent owner may also be entitled to a reasonable royalty on the infringing sales that have taken place as an alternate measure of damages. Worldwide sales data is highly relevant to this measure of damages because these sales would affect the posture of the parties during a hypothetical royalty negotiation, which will form the basis for the court's reasonable royalty determination. *See 3Com Corp. v. D-Link Sys, Inc.*, 2007 WL 949596 at *4 (N.D. Cal. Mar.

6

27, 2007) (Walker, C.J.).  Cisco has cited no contrary authority holding that worldwide sales are irrelevant to the reasonable royalty measure of damages or to the posture of the parties during a hypothetical negotiation, upon which the reasonable royalty determination is based.

Cisco also argues that U.S. data should be sufficient to establish commercial success for the purpose of showing non-obviousness.  However, the U.S. sales are only part of the commercial success achieved by SynQor's invention.  Because "the greater the commercial success worldwide, the more likely the patent is not obvious," every sale worldwide is relevant and helpful in demonstrating non-obviousness.  *3Com Corp.*, 2007 WL 949596 at *4.  These sales are not duplicative of other evidence of non-obviousness, but rather an independent indicator of the validity of SynQor's patents.  *Id.*  SynQor should not be precluded from presenting relevant evidence of worldwide sales merely because of Cisco's self-serving belief that U.S. sales alone are sufficient.  As this Court has stated, "A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.  Where relevance is in doubt … the court should be permissive."  *Gonzales v. Google*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) (quoting *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987)).

Moreover, SynQor needs worldwide sales data to test the accuracy of Cisco's U.S. sales data, to ensure that all of its IBA products are included.  Based on the information Cisco has produced to date, it appears that it may be understating the amount of its U.S. sales, and production of worldwide sales would assist SynQor in verifying the accuracy of this information.

In an attempt to exaggerate the burden it faces, Cisco misstates what SynQor has requested.  SynQor has always requested both Cisco's total worldwide sales (Document Request No. 6) and the percentage of those sales that represent products made, used, sold, offered for sale, or imported into the United States (Document Request No. 7).  (DeZern Decl. Ex. A at 3-4).  Cisco

SYNQOR'S REPLY IN SUPPORT OF ITS MTC                                    Case No. 5:10-MC-80144-JW-HRL

produced sales data on March 5 and 15, 2010.  (DeZern Decl. Ex. F; Ex. G).  SynQor believed this represented worldwide sales data, based on Cisco's representations.  (DeZern Decl. Ex. P at 3; Ex. I at 2).  After receiving this information, SynQor followed up by asking Cisco to produce U.S. sales data responsive to Request No. 7.  (DeZern Decl. Ex. H at 1).  But SynQor never said that it was no longer interested in Cisco's worldwide sales – it merely believed that Cisco had already produced that data.  Cisco still has not explained what the sales information it produced in March 2010 represents.  Much of the burden on Cisco could potentially be avoided if it would explain what it produced before.

Cisco's argument that it would be unduly burdensome for it to now produce worldwide sales data is unpersuasive and unsupported.  Cisco offers no facts or evidence whatsoever to support its assertion that compiling this information is an arduous process.  Its assertions are based on nothing more than conclusory statements by its attorneys.  Unsupported and general allegations of undue burden cannot excuse compliance with a discovery subpoena.  *Diamond State Ins. Co*, 157 F.R.D. at 696.

Cisco argues that it does not keep the requested data in the ordinary course of its business.  (Cisco Opposition at 10).  Cisco, however, certainly has databases containing sales data from which this information can be readily extracted and compiled.  When data can be extracted from a company's existing systems, it must be produced in response to a document request.  *See Google*, 234 F.R.D. at 683 (granting motion to compel production of information because "Google has not represented that it is unable to extract the information requested from its existing systems").  In light of SynQor's need for this evidence, the minimal burden on Cisco is not undue.

D.    **Documents Relating to Defendants' State of Mind (Request Nos. 13-15)**

The documents in this category are relevant to show that defendants have the requisite state of mind to prove induced infringement.  These documents will show that defendants

8

are aware that their bus converters are incorporated into Cisco products in an infringing manner.

SynQor has also requested these documents from defendants. However, there may be additional documents in Cisco's possession that defendants do not have. For example, Cisco could have a copies of presentations concerning its products that were shown to defendants but only retained by Cisco, or evidence of communications to defendants that are solely within its possession. In the face of SynQor's need for this admittedly relevant information, Cisco does not even attempt to argue that it would be unduly burdensome to make a reasonable search for this information. SynQor would be satisfied with a limited and narrowly tailored search directed at those Cisco employees most likely to have responsive documents. However, Cisco has refused to conduct any search whatsoever. Cisco has the burden to show that discovery is not proper, and it has failed to do so.

**E.      Documents Relating to Alternatives to IBA Designs (Request Nos. 16-19)**

Cisco argues that by seeking documents relating to present day analyses of viable alternatives to IBA designs, SynQor has exceeded the scope of its subpoena. (Cisco Opposition at 12). This argument is based on a misreading of the subpoena. Document Request No. 19 seeks documents "regarding the reasons and motivations … behind your adoption of an unregulated and/or semi-regulated IBA power supply design for your products." (DeZern Decl. Ex. A at 6). "Adoption" of IBA is not something that has occurred only once, when Cisco first decided to use an IBA design in one of its products. Rather, each time Cisco designs a new product and chooses to use an IBA power architecture, that is an "adoption" of IBA power architecture for that product. Cisco must make an affirmative decision to use IBA power architecture rather than some other alternative. If Cisco has any documents relating to its adoption of IBA power architecture for its more recent products, those documents are responsive to SynQor's subpoena and Cisco should be required to produce them.

In an attempt to work with and accommodate Cisco, SynQor has emphasized that it is

9

merely requesting a "targeted, reasonable search" limited to "Cisco personnel likely to have such documents." (SynQor Motion to Compel at 7; DeZern Decl. Ex. J at 3). Cisco agreed to conduct this search with respect to the time period when it first considered an IBA architecture, only to inform SynQor that no documents from that time period had been retained. (DeZern Decl. Ex. H at 2). Cisco, however, did not make any search for documents after this initial time period. There is no reason that such a search should be any more burdensome, and Cisco never explains why it would be.

Cisco's argument that SynQor should seek these documents from defendants is misplaced. SynQor's document request seeks information on the reasons why *Cisco* chose to adopt an IBA power architecture for *its own* power boards and end products, including any analysis of alternate designs. The defendants claim to not have information on how Cisco chooses to design its products. This is information that defendants allege is uniquely in the hands of Cisco. (*See* Reply DeZern Decl. Ex. V ("our clients do not know the end customers and end products for all sales of their bus converters")).

Moreover, this information is relevant to the underlying litigation and whether there are acceptable non-infringing power architectures available to Cisco. Non-infringing alternatives is a factor to consider in awarding lost profits damages, a type of damages SynQor seeks in the underlying litigation, for the infringing sales. *See Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1329 (Fed. Cir. 2009). Cisco should search for and produce any documents relating to whether it had or has alternatives that would have been or are acceptable to it, and the costs and/or burdens it would encounter if it chose to adopt the alternatives.

## III.   CONCLUSION

For the reasons stated above, SynQor respectfully requests that this Court grant its motion and compel Cisco to comply with the subpoena at issue.

10

Dated:  July 20, 2010                              Respectfully submitted,

                                                   SIDLEY AUSTIN LLP


                                                   By:  */s/  Aaron R. Bleharski*

                                                        Attorney For Movant
                                                        SynQor, Inc.

### SIGNATURE ATTESTATION

Pursuant to General Order 45(X), I hereby attest that concurrence in the filing of the attached Declaration of David T. DeZern has been obtained from David DeZern.


Dated:  July 20, 2010              SIDLEY AUSTIN LLP


                                   By:  */s/  Aaron R. Bleharski*

                                        Aaron R. Bleharski (SBN 240703)
                                        SIDLEY AUSTIN LLP
                                        1801 Page Mill Road, Suite 110
                                        Palo Alto, California 94304
                                        Telephone: (650) 565-7000
                                        Fax: (650) 565-7100

                                        Attorney for Movant
                                        SynQor, Inc.

11