**\*E-FILED 08-09-2010\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE SUBPOENA ISSUED TO CISCO SYSTEMS, INC. | No. C10-80144MISC JW (HRL) |
| | **ORDER GRANTING IN PART AND DENYING IN PART SYNQOR, INC'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA** |
| | **[Re: Docket No. 1]** |

SynQor, Inc. (SynQor) is the plaintiff in a patent infringement lawsuit currently pending against several defendants in the United States District Court for the Eastern District of Texas. Briefly stated, the patents-in-suit concern certain power conversion systems known as unregulated and semi-regulated intermediate bus architectures (IBAs). SynQor alleges that defendants contributorily infringe and induce infringement of its patents by, among other things, selling electronic bus converter products to end-product manufacturers, such as non-party Cisco Systems, Inc. ("Cisco").

Now before the court in this ancillary proceeding is SynQor's motion to compel Cisco's compliance with a subpoena seeking the production of documents and a Fed. R. Civ. P. 30(b)(6) deposition. There is no dispute as to the requested deposition, which has been set for August 19 and 20, 2010. However, SynQor and Cisco disagree as to the propriety and scope of several of SynQor's document requests. Cisco opposes the motion. At the motion hearing, the parties

were encouraged to further meet-and-confer as to the issues presented; and, assuming any agreements were reached, the parties were directed to submit a letter to the court, within a couple of days of the hearing, saying so. Not having heard anything from the parties, this court will proceed to rule on the matter. Upon consideration of the moving and responding papers, as well as the arguments of counsel, this court grants the motion in part and denies it in part.

Rule 45 of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena commanding a non-party to attend and testify; produce designated documents, electronically stored information, or tangible things in that non-party's possession, custody or control; or permit the inspection of premises. FED.R.CIV.P. 45(a)(1)(A)(iii). The scope of discovery through a Fed. R. Civ. P. 45 subpoena is the same as that applicable to Fed. R. Civ. P. 34 and the other discovery rules. FED.R.CIV.P. 45 advisory committee's note (1970).

Parties may obtain discovery about any nonprivileged matter that is relevant to any party's claim or defense. FED.R.CIV.P. 26(b)(1). "Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed.Cir.1987). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). "'A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder. Where relevance is in doubt . . . the court should be permissive.'" *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal., 2006) (quoting *Truswal Sys. Corp.*, 813 F.2d at 1211-1212). Discovery is not unfettered, however. A court must limit the extent or frequency of discovery if it finds that (a) the discovery sought is unreasonably cumulative or duplicative or can be obtained from a source that is more convenient, less burdensome or less expensive, (b) the party seeking discovery has had ample opportunity to obtain the information through discovery; or (c) the burden or expense of the discovery sought outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the discovery in resolving those issues. FED.R.CIV.P. 26(b)(2)(C)(i)-(iii).

2

A. <u>Cisco's IBA Products (Requests 1-3)</u>

These requests seek documents sufficient to identify each of Cisco's IBA products, as well as documents sufficient to show the basic technical characteristics of those products and where and by whom the products are made. According to SynQor, Cisco produced some, but not all, responsive documents. Cisco agreed to produce "all remaining materials" in advance of the scheduled Fed. R. Civ. P. 30(b)(6) deposition; and, at oral argument, Cisco confirmed that it produced all such documents prior to the hearing. SynQor maintains that certain information is still missing—namely, documents sufficient to identify semi-regulated bus converters. SynQor's June 9, 2010 letter indicates that such documents were among those sought by SynQor. (DeZern Decl., Ex. P). SynQor says that it bent over backwards to provide Cisco with information to aid the search for responsive documents. Cisco claims that the information provided by SynQor was singularly uninformative. Cisco represented to the court that it has, after diligent inquiry and reasonable search, produced all documents sought by these requests, as clarified by SynQor's June 9, 2010 letter, to the extent they exist. Based on Cisco's representation, it would appear that there is nothing more to be compelled. Nevertheless, there is a substantial disconnect here between what Cisco says it has and what SynQor believes Cisco can produce. Inasmuch as Cisco says that it remains willing to further meet-and-confer over any deficiencies in its production, SynQor's motion will be granted as to these requests. However, the court notes that Cisco says that it has already produced everything it has and that there likely are no more documents to be produced.

B. <u>Worldwide Sales Data for Cisco's IBA Products (Requests 4-7)</u>

These requests seek documents sufficient to show where and by whom IBA products are sold; the quantities of IBA products (in units and dollars) made and sold from July 4, 2006 to the present, as well as the percentage of total units of IBA product that have been made, sold, offered for sale, and/or imported into the United States since July 4, 2006. Cisco argues that in meet-and-confer negotiations, SynQor indicated that it wanted U.S. sales data. Indeed, that is corroborated by the record. (*See* DeZern Decl., Ex. H). Nevertheless, there is no apparent dispute that the requested worldwide sales information has some relevance, and Cisco has not

substantiated its assertions of undue burden. Accordingly, SynQor's motion on this issue is granted. Cisco shall endeavor to produce the information prior to the upcoming deposition.[1]

C.      Use of Defendants' Components (Requests 8-12)

These requests seek documents sufficient to show the suppliers of various components of Cisco's IBA products, as well as Cisco's projected and actual allocations of its contract manufacturer's purchases for that IBA product. It appears that Request 9 is the only one remaining in dispute—the sticking point being whether Cisco has legal "control" over documents in the possession or custody of its contract manufacturers.

"Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (concluding that an international union did not "control" the election records of its affiliated local unions and therefore could not be compelled to comply with a subpoena for those records). The party seeking production of documents bears the burden of proving that the party responding to discovery has such control. *Id.* "Control must be firmly placed in reality, not in an esoteric concept such as 'inherent relationship.'" *Id.* at 1454-55 (citations omitted). Thus, the court examines whether actual, not theoretical, control exists. *Id*.

Citing *In re Legato Sys., Inc. Securities Litig.*, 204 F.R.D. 167 (N.D. Cal. 2001), SynQor argues that Cisco has legal "control" over its contract manufacturers' documents by virtue of its business relationship with them. However, *Legato* is readily distinguishable. The court in that case held that the defendant had legal control over the transcript of his own testimony before the SEC, even though the transcript itself was in the SEC's possession. *Id*. at 170. *Legato* does not suggest that a mere business relationship will suffice to confer legal control by one company over the documents of another. SynQor has not convincingly demonstrated that Cisco has legal control over the documents of its contract manufacturers. Accordingly, its motion on this issue is denied.

---

[1] The court assumes that, if Cisco reasonably needs more time to produce the documents being ordered in response to these and other requests, SynQor will, within reason under the existing discovery schedule, work with Cisco to select another date for the deposition.

4

D.   Documents re Defendants' State of Mind (Requests 13-15)

These requests essentially seek documents sufficient to show that Cisco's suppliers (i.e., defendants in the underlying action) know that (a) their unregulated and semi-regulated bus converters and point-of-load converters are used in Cisco's IBA product; (b) the IBA product is made or sold in the U.S. and (c) the unregulated and semi-regulated converters and point-of-load converters (POLs) are used in an IBA power supply design. In sum, SynQor seeks documents showing that the defendants know that their products are being used in an infringing manner. Cisco essentially objects on the grounds that it is not a mind-reader and that any such documents should be produced by defendants.

This court agrees that SynQor's subpoena, as drafted, is vague and ambiguous and should be reasonably limited. Further, it appears that plaintiff's meet-and-confer efforts were somewhat confusing as to what SynQor really sought, inasmuch as plaintiff's counsel's correspondence seemed to suggest that these requests could be limited to documents identifying viable alternatives to IBAs.  (*See* DeZern Decl., Ex. L at 2). Moreover, SynQor has not provided much information to aid this court in determining what a fair and reasonable limit might be. At the motion hearing, SynQor indicated that it is willing to limit Cisco's search to one or two people that plaintiff believes may have responsive information. This court has no information as to who those people are, and SynQor could not identify the individuals its counsel apparently had in mind. Nevertheless, Cisco did say that there are people at the company who have contact with defendants with respect to qualifying defendants' parts. Accordingly, SynQor's motion as to this request is granted as follows:   Cisco shall conduct a diligent inquiry and reasonable search for responsive documents from two employees who have the most knowledge about and responsibility for dealing with defendants with respect to qualifying defendants' parts. Cisco shall endeavor to produce any non-privileged, responsive documents prior to its deposition. SynQor's motion is otherwise denied.

E.   Documents re Alternatives to IBA Designs (RFPs 16-19)

These requests seek all documents and/or communications about (a) SynQor's unregulated or semi-regulated bus converters; (b) praise for any unregulated or semi-regulated

1  IBA power supply design; (c) Cisco's introduction to an unregulated or semi-regulated IBA
2  power supply design; and (d) the reasons and motivations behind Cisco's adoption of an
3  unregulated or semi-regulated IBA power supply design for its products. Cisco's papers
4  suggests that only Requests 18 and 19 are at issue.

5  This court finds that the subpoena reasonably could be construed to encompass products
6  from more recent times, as opposed to only those products existing at the time of Cisco's
7  original efforts to incorporate IBA components in its products. (*See* Request No. 19). The
8  documents do have some bearing on the issues reportedly in dispute in the underlying litigation.
9  Cisco claims that these requests would encompass practically all of its products, but says that it
10 is nonetheless willing to conduct a targeted search for further responsive documents.
11 Accordingly, SynQor's motion as to this issue is granted as follows: Cisco shall conduct a
12 diligent inquiry and reasonable search for responsive documents from two employees who are
13 most knowledgeable about Cisco's decision to use of IBAs versus other alternatives. Cisco
14 shall endeavor to produce any non-privileged, responsive documents prior to its deposition.

15  SO ORDERED.

16 Dated: August 9, 2010

17
18  HOWARD R. LLOYD
    UNITED STATES MAGISTRATE JUDGE

6

5:10-mc-80144-JW Notice has been electronically mailed to:

Aaron Ritter Bleharski     ableharski@sidley.com, lbrodkin@sidley.com, tgaleana@sidley.com

Kurt Max Pankratz     kurt.pankratz@bakerbotts.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.